UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
                                                                :
BOARD OF TRUSTEES OF THE LOCAL                                  :
UNION 373 UNITED ASSOCIATION OF                                 :
JOURNEYMEN AND APPRENTICES OF THE                               :
PLUMBING AND PIPEFITTING INDUSTRY                               :
LOCAL 373 BENEFIT FUNDS,                                        :
                                                                :
                              Plaintiff,                        :        12-CV-6433 (NSR)
            -against-                                           :
                                                                :        OPINION & ORDER
T.M. BRENNAN CONTRACTORS, INC.,                                 :
                                                                :
                              Defendant.                        :
----------------------------------------------------------------X

NELSON S. ROMÁN, United States District Judge:

        The Board of Trustees of the Local Union 373 United Association of Journeymen and

Apprentices of the Plumbing and Pipefitting Industry Local 373 Benefit Funds ("Plaintiff")

commenced this action by complaint filed August 23, 2012 (dkt. no. 1), against T.M. Brennan

Contractors, Inc. ("Defendant").

        The complaint asserts a claim for withdrawal liability in the sum of $1,241,873.00, under

the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq., as

amended by the Multi-Employer Pension Plan Amendments Act of 1980 (the "MPPAA"), 29

U.S.C. §§ 1381 et seq. The complaint also seeks interest, liquidated damages, costs, and

attorneys' fees.

        The operative sections of ERISA and the MPPAA, including MPPAA Section

4219(c)(5)(B), impose withdrawal liability on an employer who has "withdrawn" and

"defaulted," through non-payment of agreed contributions to a multi-employer ERISA retirement

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/14/2015

plan. *See* 29 U.S.C. § 1399(c)(5)(B). Here, Plaintiff Board of Trustees is operating in a fiduciary capacity for the Local Union 373 "UAJAP" Pension Fund (the "Fund"), and brings this action with respect to a retirement plan for unionized employees established and maintained by the Fund. Plaintiff is acting as "plan sponsor" for purposes of this action, *id.* § 1002(16)(B)(iii), and Defendant is an "employer" within the meaning of the MPPAA, *id.* § 1002(5).

Plaintiff now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56 (dkt. no. 29). Defendant opposes the motion, arguing that countervailing legal authority and issues of material fact preclude judgment as a matter of law. For the following reasons, the Court GRANTS the motion and enters summary judgment for Plaintiff with further instructions detailed below.

## I. FACTS

The facts are gleaned from the parties' Rule 56.1 statements, affidavits, declarations, and exhibits, and are not in dispute, except where so noted. The Plan is an "employee pension benefit plan" and a "multi-employer plan" within the meaning of 29 U.S.C. §§ 1002(2) and (37). Multiple employers participate by paying contributions for covered union employees, who are the beneficiaries of the Plan. Defendant was a participating employer and made contributions to the Plan pursuant to a collective bargaining agreement (the "2005 CBA"). *See* Declaration of Giacchino Russo ("Russo Decl.") (dkt. no. 43) Ex. A. Defendant adopted the 2005 CBA by executing a compliance agreement effective May 1, 2005, which ran through April 30, 2008. *Id.* Ex. B. Defendant executed another compliance agreement effective May 1, 2008, which ran through April 30, 2011. *Id.*

In or about April 2011, Defendant stopped paying wages and benefits as it previously had done pursuant to the terms of the 2005 CBA. Defendant says it did so because it had a labor

dispute with UA Local 373, the union and counterparty to the 2005 CBA.  Defendant contends the dispute centered on the union's failure to negotiate in good faith a successor collective bargaining agreement or compliance agreement with Defendant, which would have run from May 1, 2011 onward.

The 2005 CBA and Defendant's compliance agreement lapsed as of May 1, 2011.  The parties dispute the extent to which the union initiated dialogue with Defendant about a successor agreement before the 2005 CBA lapsed.  *See id.*  Defendant says it did not receive any notice concerning a successor agreement in April or May 2011.  *See* Affidavit of Thomas Brennan ("Brennan Aff.") (dkt. no. 34) ¶¶ 11-12.  Plaintiff argues, however, that the union sent such notices as a matter of course and must have sent one to Defendant's last known address.  *See* Reply Affidavit of Robert Ambrosetti ("Ambrosetti Reply Aff.") (dkt. no. 37) ¶¶ 2-4.  Plaintiff has produced a copy of the cover memo and form compliance agreement mailed to other compliant employers in or about April 2011, which would have extended Defendant's commitment for an additional year.  *See id.*  But there is no record evidence of any actual mailing to Defendant.

In any event, after the 2005 CBA and Defendant's compliance agreement lapsed on May 1, 2011, Plaintiff eventually sent Defendant a notice of, and demand for, withdrawal liability in accordance with 29 U.S.C. § 1382.  *See* Russo Decl. Ex. D.  Plaintiff did so by letter dated January 30, 2012, and Defendant acknowledges that it received that letter.  The letter indicated that withdrawal liability of $1,241,873.00 was due, to be paid by quarterly installments.  Plaintiff submits, after actuarial analysis, that this sum is consistent with statutory provisions requiring withdrawing employers to pay a proportionate share of a retirement plan's "'unfunded vested benefits,' calculated as the difference between the present value of the vested benefits and the

3

current value of the plan's assets." *Connolly v. Pension Benefit Guar. Corp.*, 475 U.S. 211, 217 (1986) (quoting *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 725 (1984)). Defendant does not dispute Plaintiff's withdrawal liability calculation, but does dispute that any liability attaches.

According to Defendant, the January 30, 2012 letter was the first it heard of any withdrawal liability. *See* Brennan Aff. ¶ 12. Defendant says that during the commencement of the labor dispute in 2011, it believed the 2005 CBA had expired without further financial consequences. *See id.* Legally, Defendant now posits that because of the 2005 CBA's classification under the National Labor Relations Act (the "NLRA"), the agreement automatically extended on a year-to-year basis when negotiation of a successor agreement failed, which Defendant says undercuts any argument for withdrawal liability. *See id.* ¶ 11. Defendant also contends that Plaintiff had an affirmative duty to negotiate in good faith a new collective bargaining agreement. *See* Affidavit of Ronald L. Tobia ("Tobia Aff.") (dkt. no. 35) ¶ 6. Plaintiff disagrees that the 2005 CBA automatically extended and that there was an affirmative duty to negotiate a new agreement. *See* Ambrosetti Reply Aff. ¶¶ 2-4; *see also* Reply Declaration of Giacchino Russo ("Russo Reply Decl.") (dkt. no. 39) ¶ 4. Instead, Plaintiff contends Defendant was correct in thinking, during the purported labor dispute, that the 2005 CBA lapsed on May 1, 2011. Plaintiff also asserts, however, that withdrawal liability is a statutory legal consequence of this lapse and of Defendant ending payment of wages and benefits and participation in the Plan.

The parties do not dispute that shortly after Defendant received the January 30, 2012 letter, counsel for Defendant requested supporting documents, as is permitted by ERISA. Russo Decl. Ex. E. Plaintiff responded to that request on March 7, 2012. *Id.* Ex. F. On May 1, 2012,

4

Plaintiff received from Defendant certain objections to the withdrawal liability demand and a request for review pursuant to Section 4219(b)(2)(A) of ERISA.  *Id.* Ex. G.  On May 21, 2012, Plaintiff nevertheless informed Defendant it was in default of its withdrawal liability obligations, *id.* Ex. H, and, on August 10, 2012, Plaintiff responded to Defendant's objections and request for review by rejecting the objections, pursuant to Section 4219(b)(2)(B) of ERISA, *id.* Ex. I.  There was no further communication between the parties.  *Id.* ¶ 15.  On August 23, 2012, Plaintiff commenced this action.

ERISA and the MPPAA require that arbitration resolve any dispute between a plan sponsor and an employer concerning withdrawal liability, at least in the first instance.  *See* 29 U.S.C. § 1401(a)(1); *see also ILGWU Nat'l Retirement Fund v. Levy Bros. Frocks, Inc.*, 846 F.2d 879, 881 (2d Cir. 1988).  Either party may initiate the arbitration proceeding within sixty days of the earlier of:  (a) the date a plan sponsor notifies an employer of the sponsor's decision on a request for review (here, August 10, 2012); or (b) a date 120 days after the employer's request for review (here, on or about September 1, 2012).  29 U.S.C. § 1401(a)(1)(A)-(B).  In this case, the earlier of those two dates is August 10, 2012, the date Plaintiff rejected Defendant's objections.  It is undisputed that Defendant did not initiate an arbitration proceeding within sixty days of August 10, 2012, and has not done so to this day.  Nor did the parties jointly initiate arbitration within 180 days of the January 30, 2012 demand for withdrawal liability, as ERISA also permits.  *Id.* § 1401(a)(1).

## II.  SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 states, in pertinent part:  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving

party bears the initial burden of pointing to evidence in the record, "including depositions, documents . . . [and] affidavits or declarations," Fed. R. Civ. P. 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party also may support an assertion that there is no genuine dispute by "showing . . . that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). If the moving party fulfills its preliminary burden, the onus shifts to the non-moving party, which must identify "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quoting Fed. R. Civ. P. 56); *Bennett v. Watson Wyatt & Co.*, 136 F. Supp. 2d 236, 244 (S.D.N.Y. 2001).

A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013); *Gen. Star Nat'l Ins. Co. v. Universal Fabricators, Inc.*, 585 F.3d 662, 669 (2d Cir. 2009); *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008). Courts must "constru[e] the evidence in the light most favorable to the non-moving party and draw[] all reasonable inferences in its favor." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (quoting *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 113 (2d Cir. 2005)). In reviewing the record, "the judge's function is not himself to weigh the evidence and determine the truth of the matter," nor is it to determine a witness's credibility. *Anderson*, 477 U.S. at 249; *see also Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010) ("The function of the district court in considering the motion for summary judgment is not to resolve disputed questions of fact."). Rather, "the inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Anderson*, 477 U.S. at 250.

6

### III. DISCUSSION

To forestall summary judgment in this case, Defendant argues for the application of 29 U.S.C. § 1398, which says that "withdrawal" from a plan does not occur if an employer suspends contributions during a labor dispute involving its employees.  Defendant also assigns legal significance to the disputed fact that Plaintiff may not have received a notice concerning negotiation of a successor agreement before the lapse of the 2005 CBA.  Last, and more generally, Defendant contends that issues of fact concerning Plaintiff's failure to negotiate in good faith a successor agreement preclude summary judgment.

Taking these arguments in reverse order, any issues of fact concerning the parties' intentions or Plaintiff's good or bad faith in negotiating are immaterial because of Defendant's failure to seek arbitration.  Defendant has cited no authority suggesting that the absence of good faith negotiation of a collective bargaining agreement, on the part of an employer, affects the requirement that an assessment of withdrawal liability be arbitrated.  Nor is this Court aware of any such authority.

Likewise, Defendant has cited no authority making it legally significant under ERISA or the MPPAA that Defendant may not have received a written notice before the 2005 CBA lapsed. This could be legally significant under the NLRA.  Defendant contends the failure, together with lack of good faith negotiation, amounts to an unfair labor practice under that statute.  *See* Tobia Aff. ¶¶ 7-8.  But this withdrawal liability action arises under ERISA and the MPPAA.  Purported unfair labor practices in collective bargaining are collateral and immaterial to the instant motion, which turns on the preclusive legal effect of failure to arbitrate.

Defendant also submits no authority supporting the argument that the carve-out at 29 U.S.C. § 1398 absolves Defendant of its failure to initiate arbitration.  Worse, Defendant fails to

direct the Court to controlling adverse precedent which belies this argument.  *New York State Teamsters Conf. Pension & Ret. Fund v. McNicholas Transportation Co.*, 848 F.2d 20, 23 (2d Cir. 1988) (rejecting argument that possible applicability of Section 1398—given cessation of contributions to plan purportedly because of labor dispute—eliminated requirement that employer pursue arbitration within prescribed time limits); *see also Trustees of the Colo. Pipe Indus. Pension Trust v. Howard Electrical & Mechanical Inc.*, 909 F.2d 1379, 1385 (10th Cir. 1990) (existence of labor dispute does not eliminate arbitration requirement for collateral withdrawal liability dispute).  It may be that Defendant could have relied upon Section 1398 in arbitration, or that Defendant could assert the section here, had Defendant preserved that defense in arbitration proceedings.  But there were no arbitration proceedings.

It has been said that "[a]rbitration reigns supreme under the MPPAA."  *Colo. Pipe Indus.*, 909 F.2d at 1385.  As noted, the parties jointly, or the objecting employer unilaterally, must initiate arbitration within certain prescribed time limits for any dispute concerning withdrawal liability between the employer and the plan sponsor of a multi-employer plan.  29 U.S.C. § 1401(a)(1).  That is well-settled.  *Colo. Pipe Indus.*, 909 F.2d at 1385.  An eventual arbitration award is subject to review by the courts, 29 U.S.C. § 1401(b)(2), although the arbitrator's findings of fact are presumed correct unless rebutted by a clear preponderance of the evidence, *id.* § 1401(c).

"Where no arbitration proceeding is initiated, the plan sponsor may bring an action in state or federal court to collect the amounts due and owing."  *Levy Bros. Frocks*, 846 F.2d at 881 (citing 29 U.S.C. § 1401(b)(1)).  The employer's failure to initiate arbitration operates as a waiver of any defenses to the liability, or to the amount thereof, which could have been asserted in arbitration.  The liability assessed becomes fixed and must be paid.  *Finkel v. Trustees &*

*Fiduciaries of the Local 282 Pension Trust Fund*, 08-cv-4598, 2010 U.S. Dist. LEXIS 118279, at *10-11 (E.D.N.Y. Oct. 8, 2010) (citing *Bowers v. Transportacion Maritima Mexicana, S.A.*, 901 F.2d 258, 265 (2d Cir. 1990) and *Vacca v. Bridge Chrysler Jeep Dodge, Inc.*, 06-cv-3543, 2008 U.S. Dist. LEXIS 85223, at *7 (E.D.N.Y. Sept. 4, 2008)).  Any challenge to that liability is foreclosed.  *UNITE Nat'l Ret. Fund. v. Veranda Mktg. Co.*, 04-cv-9869, 06-cv-0055, 2009 U.S. Dist. LEXIS 59447, at *10 (S.D.N.Y. July 13, 2009).

This holds true for any dispute between an employer and a plan sponsor in relation to withdrawal liability.  *Bowers*, 901 F.2d at 261.  The arbitration requirement is considered an exhaustion of administrative remedies requirement.  *Levy Bros. Frocks*, 846 F.2d at 886. Preclusion of defenses and judgment as a matter of law following failure to arbitrate are a harsh result.  But the "wound is self-inflicted," and the result is what Congress intended—disputes over withdrawal liability are to be resolved quickly, in the interest of protecting covered employees whose pensions may be at stake.  *See id.* at 881, 887 ("The purpose of withdrawal liability is to relieve the funding burden on remaining employers and to eliminate the incentive to pull out of a plan which would result if liability were imposed only on a mass withdrawal by all employers."); *see also TIME-DC v. Mgmt.-Labor Welfare & Pension Funds*, 756 F.2d 939, 943 (2d Cir. 1985) (The MPPAA was designed "to protect the interests of participants and beneficiaries in financially distressed multi-employer plans and to encourage the growth and maintenance of multi-employer plans.").

Defendant concedes that it received Plaintiff's January 30, 2012 letter notifying it of withdrawal liability and demanding payment of the same.  Defendant does not challenge in any meaningful way the form or timing of that letter.  Even if that was the first notice of liability Defendant received, it triggered statutory procedural requirements, most of which Defendant

followed thereafter.  Ultimately, Plaintiff's August 10, 2012 rejection of Defendant's objections commenced a sixty-day period during which Defendant was obligated to initiate arbitration. Defendant admits it did not do so.  None of the arguments made in briefing excuse this failure,[1] which is a failure to exhaust administrative remedies that must be afforded preclusive effect as to any defenses Defendant could otherwise have asserted.  The ultimate result is that the withdrawal liability becomes fixed as assessed and must now be paid.

---

[1] Defendant has not argued that the August 23, 2012 commencement of this action tolled the deadline to initiate arbitration, even though Plaintiff commenced the action before the deadline passed.  This argument would, in any event, fail because Defendant concedes the validity of the January 30, 2012 notice of withdrawal liability.  *See Bowers*, 901 F.2d at 264 (valid notice of withdrawal liability before commencement of court action undercuts tolling argument).

## IV. CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment is GRANTED. The Court finds Defendant liable for the sum of $1,241,973.00, together with interest, liquidated damages, and reasonable costs and attorneys' fees. *See* 29 U.S.C. § 1132(g); *see also Veranda Mktg. Co.*, 2009 U.S. Dist. LEXIS 59447, at *15 (awarding the same). By February 6, 2015, Plaintiff shall file a proposed judgment reflecting the total amount due, with supporting materials calculating and itemizing categorically any interest, liquidated damages, costs, and attorneys' fees which Plaintiff contends are due as part of the total amount. Defendant shall file any objections to the proposed judgment by February 27, 2015, and the Court will enter final judgment thereafter. The Clerk of Court is respectfully requested to terminate the motion at docket number 29.


Dated: January 14, 2015                                    SO ORDERED:
       White Plains, New York

                                                    _____
                                                    NELSON S. ROMÁN
                                                    United States District Judge